# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18bk24734 |
| | ) | |
| William & Dulcie Montanez, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Honorable LaShonda A. Hunt |
| | ) | |

## MEMORANDUM OPINION

### Introduction

Pending before the court is the motion of Chapter 7 Trustee Cindy Johnson to compel turnover of funds by debtors William J. Montanez and Dulcie M. Montanez.[1] The Trustee contends that although the Montanezes properly claimed an exemption under Illinois law in proceeds from the pre-petition sale of their residence, their failure to then reinvest those proceeds in another homestead within the one-year statutory time limit caused the funds to revert to the bankruptcy estate. The Montanezes challenge the turnover request on two grounds—first, as untimely since the Trustee failed to object to the proceeds exemption, and second, as contravening the well-established snapshot rule that provides for property of the estate to maintain its exempt status held on the petition date. The Trustee counters with arguments about the supremacy of state exemption schemes and her ability to stand in the shoes of a hypothetical lien creditor and levy under state law. For the reasons discussed below, the court agrees with the Montanezes, and so the Trustee's motion will be denied.

---

[1] The Trustee filed a subsequent Motion to Compel Turnover of Funds (Dkt. 33) involving a different bank account, that is still pending and is not being resolved by this opinion.

1

**Background**

The following facts are undisputed and drawn from the pleadings and bankruptcy docket, of which this court takes judicial notice. *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989). Around June 21, 2018, the Montanezes sold their home and received $12,176 in sale proceeds, which they placed in a separate savings account at Bridgeview Bank. (Dkt. 24 ¶¶ 3–4). A couple of months later, the Montanezes filed a joint Chapter 7 petition on August 31, 2018. (*Id.* ¶ 1). They listed the Bridgeview Bank savings account containing $12,176 on Schedule A/B and claimed an exemption in those proceeds under 735 ILCS 5/12-906 on Schedule C.[2] (Dkt. 1 at 12, 17). The Trustee held the initial § 341 meeting of creditors on or about October 9, 2018,[3] then continued the meeting to November 13, 2018, and finally to December 27, 2018. (Dkts. 11, 14). The Trustee filed an initial report of assets on January 3, 2019. (Dkt. 17). However, she did not object to the Montanezes' exemption.

Instead, on August 16, 2019, the Trustee sought to compel them to turn over the sale proceeds because the exemption officially expired on June 21, 2019—one year after the sale—when the Montanezes had not used them to purchase a new homestead. (Dkt. 24). The Trustee maintained that if the proceeds were no longer exempt under Illinois law then they likewise lost their exemption in the bankruptcy case. The Montanezes disagreed, asserting that since the Trustee never objected to the exemption, the proceeds had passed out of the estate and were no longer recoverable for distribution to pre-petition creditors. They also argued that the snapshot rule governed, meaning that state law in existence on the petition date determines a property's

---

[2] The Montanezes actually claimed their full $30,000 homestead exemption, the amount for a jointly filing couple, even though the proceeds totaled less than half of that amount.

[3] The Montanezes state that they attended the meeting on October 8, 2018 (Dkt. 27), although the notice of bankruptcy case states the meeting was scheduled for October 9, 2018 (Dkt. 8).

exemption status and the property maintains that status throughout the bankruptcy case. The Trustee responded that there was no need for her to object before the exemption actually expired, or at all, given that the estate holds an unexempted equitable interest. She also insisted that bankruptcy law should bow to Illinois law when applying state exemptions, or else, contrary to the intent of the Illinois legislature, a conditional exemption would be treated as permanent for a bankruptcy debtor. (Dkt. 30).

The parties later filed supplemental authority in support of their respective positions, with each pointing to recent Seventh Circuit rulings. (Dkts. 40, 46). The Montanezes cited *In re Burciaga*, 944 F.3d 681 (7th Cir. 2019), as affirming the validity of the snapshot rule, while the Trustee relied on *In re Jaffe*, 932 F.3d 602 (7th Cir. 2019), for the premise that an exemption may be limited by a contingent future interest. The court heard oral argument on February 6, 2020, after which the Trustee submitted a list of additional authority for consideration. The matter was then taken under advisement.

## Jurisdiction

The court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E).

## Discussion

When a bankruptcy petition is filed, an estate is created which encompasses all property of the debtor, even property later claimed to be exempt. 11 U.S.C. § 541(a)(1), (a)(2); *Owen v. Owen*, 500 U.S. 305, 308 (1991); *In re Geise*, 992 F.2d 651, 655 (7th Cir. 1993). Property vests in the estate immediately and is available to satisfy prepetition claims. *Burciaga*, 944 F.3d at 685. But debtors may remove certain property from the estate by claiming exemptions under § 522(b).

3

*Owen*, 500 U.S. at 308; *Payne v. Wood*, 775 F.2d 202 (7th Cir. 1985). Once removed, the property generally passes through the bankruptcy and returns to the debtors. *Payne*, 775 F.2d at 204.

Debtors can use exemptions enumerated by the Bankruptcy Code or under applicable nonbankruptcy law. 11 U.S.C. § 522(b)(1)–(3). That said, states may choose to require debtors to use state exemptions only. *Owen*, 500 U.S. at 308 ("[n]othing in subsection (b) (or elsewhere in the Code) limits a state's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."). Illinois has done just that. *See* 735 ILCS 5/12-1201; *Clark v. Chicago Mun. Emp. Credit Union*, 119 F.3d 540, 543 (7th Cir. 1997). The state of affairs and the state law applicable on the petition date determine what is and is not exempt in a bankruptcy case. 11 U.S.C. § 522(b)(3)(A); *Owen*, 500 U.S. at 314 n.6 (deferring to this statutory language). This focus on the petition date is known as the "snapshot" rule: the parties take a snapshot of the case on the filing date and all rights are fixed. *In re Awayda*, 574 B.R. 692, 695–96 (Bankr. C.D. Ill. 2017).

The Supreme Court first recognized the snapshot rule's application for homestead exemptions in *White v. Stump*, 266 U.S. 310, 313 (1924) (explaining that "the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed"). The Court later affirmed the principle "that the bankrupt's right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy and cannot thereafter be enlarged or altered by anything the bankrupt may do." *Myers v. Matley*, 318 U.S. 622, 628 (1943). At issue substantively is whether the snapshot rule still controls in the face of a conditional state law exemption. But before the court can reach that question, the Trustee has to overcome an initial hurdle—her lack of objection to the Montanezes' proceeds exemption.

4

**I.     Requirement to Object to Exemptions**

The Montanezes had a right to claim the proceeds exemption under applicable Illinois law as of the petition date in August 2018, 735 ILCS 5/12-906, and they properly did so on their Schedule C. S*ee* 11 U.S.C. § 522(*l*); Fed. R. Bankr. P. 1007, 4003. At that point, any interested party who opposed this property being exempted and removed from the estate needed to file an objection within thirty days after the trustee concluded the § 341 meeting of creditors. Fed. R. Bankr. P. 4003(b)(1). Without a timely objection, "the property claimed as exempt on [Schedule C] is exempt." 11 U.S.C. § 522(*l*). Nevertheless, the court can extend that deadline for cause if a request is filed before the thirty days expires. Fed. R. Bankr. P. 4003(b)(1).

Here, the Trustee adjourned and continued the Montanezes' § 341 meeting several times, with the final meeting held on December 27, 2018. A week later, she filed an initial report of assets in the case. A § 341 meeting concludes at the end of its scheduled date and time, unless the Trustee adjourns and files a notice of the next date and time. *See* Fed. R. Bankr. P. 2003(e), Advisory Committee Notes, 2011 Amendments; *see also Jenkins v. Simpson (In re Jenkins)*, 784 F.3d 230, 238 (4th Cir. 2015) ("because the meeting was never adjourned, we hold it was concluded").[4] For that reason, the thirty-day clock began to run after the December meeting, with the Trustee (or any other interested party) having until January 26, 2019 to object.

The Trustee did not seek an extension of the time to object nor did she file an objection to the proceeds exemption. In that situation, the law is clear—a trustee who fails to make a timely objection may not later contest an exemption. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–44

---

[4] Before 2011, circuits were split between a "bright-line" approach—a meeting that ends without a follow-up date has concluded—and a "case-by-case" approach—a factor test is used to determine whether a trustee's delay is reasonable. *Compare In re Smith*, 235 F.3d 472, 476-77 (9th Cir. 2000) ("bright-line" approach) *with In re Peres*, 530 F.3d 375, 378 (5th Cir. 2008) ("case-by-case" approach). The 2011 amendment to Rule 2003 resolved this by unambiguously requiring an announcement of the next date and time if the trustee adjourns the meeting. *Jenkins*, 784 F.3d at 238.

(1992). Even if the debtors claim an invalid exemption with no colorable basis, interested parties must lodge a timely objection in order to challenge the exemption. *Id.; cf. Schwab v. Reilly*, 560 U.S. 770, 795 (2010) (granting turnover of any value exceeding a scheduled exemption amount, as that value was not exempted and thus not lost by a lack of objection). By failing to object, then, the Trustee forfeited her right to attack the Montanezes' exemption. As a result, those exempted proceeds returned to them, and, more significantly, now fall beyond the reach of pre-petition creditors. *Payne*, 775 F.2d at 204. The Trustee certainly has a right to seek turnover of property of the estate that has not been exempted under § 522, but these proceeds do not fit within that category. *See* 11 U.S.C. § 542(a).

### A. **Ripe for Objection**

The Trustee suggests that she lacked a good-faith basis for objecting to the Montanezes' exemption by the January 2019 deadline, given that the statute exempted their homestead proceeds for a year post-sale, which did not expire until June 2019. While that may be true, the Trustee was not without a remedy under these circumstances. She could have simply continued the § 341 meeting under Rule 4003(b)(1) until the one-year time limit ran or moved to extend the time period to object. *See In re Stewart*, 452 B.R. 726, 731 (Bankr. C.D. Ill. 2011). Unfortunately,, inaction has real consequences when it comes to exemptions. *See Taylor*, 503 U.S. at 642. And this court cannot ignore the mandate of *Taylor*, Rule 4003, and § 522(*l*), that an exemption stands if not challenged by the applicable deadline. Because the homestead proceeds were exempted and removed from the estate, it is too late for the Trustee to recoup those funds from the Montanezes now.

B. **Contingent Future Interest**

Additionally, the Trustee argues that 735 ILCS 5/12-906 creates an equitable interest that remained in the estate. She states the interest is specifically a contingent future interest in the proceeds that vests once a year passes without the funds being reinvested in another homestead. Since this contingent future interest was not exempted by the Montanezes—only the present interest was exempted—it remains within the reach of the Trustee. The text of 735 ILCS 5/12-906 reads as follows:

> When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it would not be subject in the possession of such owner; and the proceeds thereof, to the extent of the amount of $15,000, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead.

According to the Trustee, the equitable interest within this statute is property of the estate subject to turnover.

Federal courts in Illinois must apply state rules of statutory construction when interpreting a state statute. *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019), *question certified and aff'd,* 2020 WL 398783 (Ill. 2020). The primary rule is to "ascertain and give effect to the intent of the legislature," and the best evidence of this is the "language used in the statute itself." *Hernandez,* 2020 WL 398783 at *4. When a statute's language is clear, however, there is no need to resort to legislative intent or other canons of construction. *Id.*; *Burciaga,* 944 F.3d at 684. A federal court may not depart from the plain language of a statute by reading into it limitations and exceptions not otherwise expressed by the legislature. *In re Robinson*, 811 F.3d 267, 271 (7th Cir. 2016); *Illinois State Treasurer v. Illinois Workers' Comp. Comm'n,* 30 N.E.3d 288, 294 (Ill. 2015).

7

The Seventh Circuit examined contingent future interests in *In re Jaffe*, a decision relied on by the Trustee. 932 F.3d 602 (7th Cir. 2019). There, a pre-petition judgment had been entered solely against the debtor, but the resulting lien attached to real property owned by the debtor and his non-filing spouse as tenants by the entirety. *Id.* at 604–05. While the bankruptcy case was pending, the non-filing spouse died; the debtor then moved to avoid the judgment lien, arguing that his tenancy interest was exempt under Illinois law in accordance with § 522(b)(3)(B). *Id.* The Seventh Circuit held otherwise, concluding instead that the lien attached to a contingent future interest the debtor held on the filing date which was not exempt. *Id.* at 609–10. The court noted that Illinois law expressly provided for a contingent future interest that tenants by the entirety hold individually of each other. *Id.*; *see also* 765 ILCS 1005/1c. So, although the judgment lien did not affect the exempt tenancy interest held by the debtor, it did attach to the nonexempt contingent future interest.

The Trustee uses *Jaffe* to argue that "developments which occur after the filing of a bankruptcy case which are contained in the exemption, to limit the extent of the exemption do have an impact on a debtor's entitlement to the exemption." (Dkt. 30 at 7). That is an overly broad reading of the case that misses the point. The Seventh Circuit focused on defining the debtor's precise interest in the property at the petition date. *Jaffe*, 932 F.3d at 605. And the court determined that because the debtor held a contingent future interest to which a lien could attach when the case was filed, his reliance on the exemption for tenancy interests in § 522(b)(3)(B) was misplaced. The post-petition death of his non-filing spouse (which left the debtor with a fee simple interest in the property) did not impact the analysis. In other words, that future development was irrelevant in assessing the applicability of the exemption.

8

The Trustee directs the court to a Ninth Circuit Bankruptcy Appellate Panel decision that granted turnover of uninvested homestead proceeds under Arizona law, finding that "the estate held a contingent, reversionary interest in the sale proceeds." *Gaughan v. Smith (In re Smith),* 342 B.R. 801 (9th Cir. BAP 2006). But the BAP did not provide a basis for its holding under either a state statute or a common-law principle. And it does not appear that any other circuit has followed this ruling. As a result, that decision is neither binding nor persuasive.

Property interests in a federal bankruptcy case are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). As reflected in *Jaffe*, the Illinois legislature has created contingent future property interests. *See, e.g.*, 765 ILCS 1005/1c (future interests held by a tenant by the entirety); 765 ILCS 5/10 (conveying future interests); 765 ILCS 340/1 (Contingent Remainder Act); 765 ILCS 330/2 (the possibility of reverter and right of re-entry in a trust). If the Illinois legislature intended to create contingent future interests in homestead proceeds, they could have done so. *Robinson*, 811 F.3d at 271. But the proceeds statute does not evince any such intent. All this statute says is that homestead proceeds are exempt from "judgment or other process" for one year following the sale, with no indication of a potential defeasible property interest after that year. This court cannot read a right into a state law when the plain face of the law does not create that right. *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir. 2015). Indeed, when a state law is clear as to what is exempt and what is not, courts should not try to read beyond that plain language to establish any other intent. *Cf. Burciaga*, 944 F.3d at 683 (admonishing courts to look at "what is exempt under state law" as opposed to "what state legislators may have been thinking or hoping"). As such, this court declines to interpret the proceeds statute as providing a nonexempt equitable interest to the bankruptcy estate.

## II. State Law Cannot Justify Turnover

The Trustee insists that even without an objection to the proceeds exemption, state law provides a basis under which her turnover request can still be granted. She points to the bankruptcy policy of fully recognizing and enforcing a state's exemption scheme as well as her ability to levy under state law as a hypothetical lien creditor. Ultimately the Trustee presumes that state exemptions adopted under § 522(b)(3) can override competing federal interests, including the snapshot rule, but this court is not persuaded.

### A. Limitation on State Exemptions

The Trustee's main argument is that the purpose of § 522(b)(3) is to adopt state exemptions as they would apply under state law, which necessarily includes the temporal limitation on homestead proceeds. She urges this court to follow the rationale of *In re Stewart*, where Bankruptcy Judge Thomas L. Perkins in the Central District of Illinois held that "the reinvestment conditions remain operative in bankruptcy so that the exemption is properly denied if the proceeds are not reinvested in a homestead within the one-year period dictated by the state statute." 452 B.R. at 730. The Ninth and Fifth Circuits agree with that approach and likewise require turnover of homestead proceeds if not reinvested during the bankruptcy. *See England v. Golden (In re Golden)*, 789 F.2d 698, 700 (9th Cir. 1986); *Zibman v. Tow (In re Zibman)*, 268 F.3d 298 (5th Cir. 2001).[5] The Fifth Circuit decision, which *Stewart* relies on, concluded that "it is the *entire* state law applicable on the filing date that is determinative." *Zibman*, 268 F.3d at 301 (emphasis in original). Thus, "[w]hen a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights . . . but also, to the limitations

---

[5] The Fifth Circuit also recognized that *Taylor* prevents a trustee from contesting the validity of an expired exemption after failing to file a timely objection. *See In re Hawk*, 871 F.3d 287, 296 (5th Cir. 2017) (analyzing an analogous exemption requiring rollover of IRA proceeds).

integral in those exemptions as well." *Id.* at 304. Judge Perkins similarly reasoned that "[i]n opt-out states where property exemptions are controlled by state law, the bankruptcy court is to apply each exemption and all of its terms and conditions exactly as state law provides." *Stewart,* 452 B.R. at 730.[6]

The Montanezes contend that *In re Awayda*, a Central District of Illinois decision by Bankruptcy Judge Mary P. Gorman rejecting *Stewart*, is more persuasive. The *Awayda* holding rests on two key principles that this court does find more compelling—the supremacy of the snapshot rule and the liberal construction of exemption statutes.

First, as Judge Gorman explained, "[t]he snapshot rule is not discretionary. It is an essential component of bankruptcy law that ensures consistency, efficiency, and finality in Chapter 7 cases." *Awayda*, 574 B.R. at 696. The Montanezes are correct that the Seventh Circuit's *Burciaga* decision reaffirms that courts "must assess the legal effect of things as they were when this bankruptcy began, not as they might have been." 944 F.3d at 685. Even if application of the snapshot rule to the Illinois proceeds exemption seems inequitable—perhaps due to a planned strategic filing—"the Bankruptcy Code is what it is and cannot be overridden in the name of equity." *Id.; see also Law v. Siegel*, 134 S. Ct. 1188, 1196 (2014) ("§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate"); *Pasquina v. Cunningham (In re Cunningham)*, 513 F.3d 318, 324 (1st Cir. 2008) ("To interpret § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle [that a debtor's exemptions are determined as of the time of the filing of his petition] and its relationship to the fresh start policy of the Bankruptcy Code.").

---

[6] The trustee in *Stewart* also raised a timely objection to the debtors' exemptions. 452 B.R. at 731. *See infra* Section II.B.

11

The snapshot rule facilitates a clear beginning of the case and creation of the estate, an expeditious and final disposition for the assets, and a clean and fresh start for the debtor. *See Schwab*, 560 U.S. at 793–94 (2010). This predictability would not be guaranteed if a bankruptcy court allowed an exemption expiration clock to continue to run during the case. That is exactly why "developments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing." *In re Snowden*, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008). To interpret the exemption statute here as the Trustee suggests would lead to a situation where "if a debtor no longer qualifies for an exemption in certain property after filing, the [t]rustee may then administer that property as though it had never been exempt," a practice that would directly conflict with § 522(l). *Id.* The door would be opened for trustees to "monitor a debtor's post-filing behavior and to revisit exemption claims if a debtor fails or is unable to maintain property in the form that made it exempt at the time of the case filing." *Id.* And that would encourage actions that are "contrary to the Code's command in [§ 704(a)(1)] that trustees close cases expeditiously." *Awayda,* 574 B.R. at 697.

Second, just as the proceeds statute does not create a protectible contingent future interest in a bankruptcy estate, *supra* Section I.B, it also does not express a legislative intent to limit the availability of the exemption in homestead proceeds. *Awayda,* 574 B.R. at 698. Illinois exemptions are to be construed liberally in favor of debtors. *Robinson*, 811 F.3d at 271. While *Stewart* complains that not enforcing the one-year reinvestment requirement unfairly gives debtors an unintended permanent exemption, that is not in fact the case. 452 B.R. at 741. Rather, this court agrees with the analysis of Bankruptcy Judge Manuel Barbosa in *In re Lantz* that the exemption properly prevents pre-petition creditors who are subject to the discharge injunction in § 727(b) from seeking to collect against those proceeds. 446 B.R. 850, 859 (Bankr. N.D. Ill. 2011).

12

Put another way, "the one-year limitation is still in effect" since post-petition creditors may assert claims against the proceeds if debtors fail to reinvest. So, whether inside or outside of bankruptcy, homestead proceeds can remain subject to collection efforts if not converted into another exemptible form. That interpretation recognizes the integral temporal limitations of the proceeds statute without abrogating the snapshot rule.

### B. Hypothetical Lien Creditor

Finally, the Trustee states that her ability to step into the shoes of a hypothetical lien creditor and levy against the proceeds under state law allows her to recoup these funds. *See* 11 U.S.C. § 544(a); *see also In re Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1244 (7th Cir. 1994); *In re Shannon,* 590 B.R. 467, 484 (Bankr. N.D. Ill. 2018). The Trustee points to 735 ILCS 5/2-1402(k-10), which allows a creditor to attach a citation lien to personal property just as it would attach to real property. Her argument is that because a hypothetical lien creditor could have attached a citation lien to the proceeds under that provision, she may exercise that authority also.

*Stewart* offers some support for the Trustee's position, as Judge Perkins noted that "[a] trustee has all of the rights that a levying creditor would have with respect to property of the estate." 452 B.R. at 738. Thus, the court reasoned, the trustee's potential right to administer the proceeds could remain pending for a year as well. *Id.* But this case is easily distinguishable. Unlike *Stewart*, neither the trustee nor any other interested party objected to the exemption, which means the proceeds are no longer part of the estate, let alone subject to levy for discharged pre-petition claims.

Moreover, even if that were not the case, as the Supreme Court explained in *Myers*, "[t]he trustee is vested not only with the title of the bankrupt but clothed with the right of an execution creditor with a levy on the property which passes into the trustee's custody." 318 U.S. at 783. Still,

13

the trustee's "rights rise no higher than those of the supposed creditor and attach at the date of the inception of bankruptcy." *Id.* On the date of filing, the Montanezes indisputably held a valid exemption in the proceeds which neither the Trustee nor any other lien creditor could levy upon.

At most, as the court clarified above, now that the one-year reinvestment period has passed, a post-petition creditor could levy on the proceeds. But any hypothetical lien creditor represented by the Trustee would hold interests in discharged pre-petition claims that are no longer collectible against the Montanezes' personally. Simply put, there are no shoes for the Trustee to step into in order to exercise levying rights on the proceeds.

## Conclusion

This contested matter presents a number of challenging questions about how to reconcile competing policies when applying state-law exemptions in bankruptcy cases. Procedurally, though, the Trustee can no longer challenge the exemption here due to her failure to timely object. And substantively, while the Trustee's arguments are compelling, they are not enough to override the significance of the snapshot rule in promoting uniformity and finality in bankruptcy cases. The Trustee's motion to compel turnover of these proceeds must therefore be denied.

Dated: April 1, 2020                             ENTER:

*LaShonda A. Hunt*
Hon. LaShonda A. Hunt
United States Bankruptcy Judge

14